STATE OF MISSOURI at the relation of WILLIAM HENNING, Relator, v. CHARLES B. WILLIAMS, Judge of Division No. One of the Circuit Court of the City of St. Louis, and JOSEPH H. CHURCHILL. —131 S. W. (2d) 561

Court en Banc, September 5, 1939.

*Cobbs, Logan, Roos & Armstrong* for relator.

24

*Joseph N. Hassett* and *Vernon L. Turner* for respondents.

ELLISON, J.—Prohibition to Hon. Charles B. Williams, judge of the Circuit Court of the City of St. Louis, Division I, to prevent him from exercising jurisdiction over the person of the relator in the cause below mentioned. For return respondent demurred to the petition set out in our provisional rule, thereby resting the proceed-

ing on issues of law. Joseph Churchill and his wife were injured in St. Charles County in December, 1937, in a collision with an oil truck owned by the Shell Petroleum Corporation and driven by the relator, its employee. The relator is a resident of St. Charles County. Churchill is a resident of St. Louis County. The Shell Company, as we shall call it, is a Virginia corporation licensed to do business in this State and maintaining an office and place of business in the city of St. Louis. But that city is a separate county for governmental purposes under its charter and Section 23, Article 9 of the Constitution. Churchill brought suit in the above court in the City of St. Louis for over $18,000 damages allegedly sustained through the relator's negligence in the operation of the truck, and joined relator and the Shell Company as defendants.

Summons was issued and served on the Shell Company in St. Louis. It made no objection to the service, but filed a petition and bond for removal to the Federal Court, where the proceeding is still pending on a motion to remand. Another summons issued out of the state court was served on the relator in St. Charles County. He appeared specially and filed a plea in abatement to the jurisdiction based on the ground that his co-defendant, the Shell Company, is a resident of Virginia, not of Missouri, in consequence of which the venue of the action is in St. Charles County where he lives, not in St. Louis where the Shell Company has an office. The question is one of statutory construction. The plea was overruled by the trial court and relator brings prohibition here on the same grounds.

His legal theory is that the general venue statute, Section 720, Revised Statutes 1929 (Mo. Stat. Ann., p. 929), governs the case below because the action was brought against him and the Shell Company jointly; that Section 723, Revised Statutes 1929 (Mo. Stat. Ann., p. 936), the venue statute in suits against corporations, is not controlling because that statute applies only when a corporation, domestic or foreign, is the *sole* valid defendant. Both these contentions are well founded: State ex rel. Columbia National Bank v. Davis, 314 Mo. 373, 284 S. W. 464, an exhaustive banc decision. The case therefore hinges on the construction to be given Section 720. The only parts thereof which can have any bearing on the controversy are as follows:

''Suits instituted by summons shall, except as otherwise provided by law, be brought: . . .; *second,* when there are several defendants, and they reside in different counties, the suits may be brought in any such county; *third,* when there are several defendants, some residents and others non-residents of the state, suit may be brought in any county in this state in which any defendant resides;'' (For the legislative history of the several clauses of this section see State ex rel. Standard Fire Ins. Co. v. Gantt, 274 Mo. l. c. 504, 505, 203 S. W. l. c. 967; 2 Mo. Stat. Ann., p. 929).

If the Shell Company is a *resident* of the City of St. Louis within the meaning of the second clause the action was well brought in that city. But if it is not then neither clause applies, for, although the third clause covers actions where one or more of the defendants are non-residents, still it requires the suit to be brought in a county where some defendant resides. So the question is whether a foreign corporation licensed to do business in this State and having an office and place of business in some county is a resident of that county for the purposes of service under clause 2 of Section 720.

Relator cites several standard texts which state the general rule that a corporation can have only one legal residence, namely, in the state of its creation, even though it be licensed to transact business in other states.* He notes also the fact that the same rule is enforced in the Federal courts when the jurisdiction and venue are dependent on diversity of citizenship, as in: Seaboard Rice Milling Co. v. C., R. I. & P. Ry. Co., 270 U. S. 363, 366, 70 L. Ed. 633, 46 Sup. Ct. 247; Central West Public Service Co. v. Craig, 70 Fed. (2d) 427, 430(6). Three state cases listed in his brief may be in point: Page Belting Co. v. Joseph, 226 N. Y. Supp. 723, 727; Wachtel v. Diamond State Engineering Corp., 213 N. Y. Supp. 77; Larson v. Dubuque Fire & Marine Ins. Co., 238 Mich. 366, 213 N. W. 140.

But the rule contended for by relator is not the general rule as to venue, and is not supported by most of the case and text law cited by him. Thus it is said in 14a Corpus Juris, section 4119, page 1398, that: "For purposes of venue a corporation is deemed a non-resident of states other than the one in which it is incorporated. In the absence of any constitutional or statutory provision fixing the place of trial in actions against foreign corporations in any particular county, the action may be brought and maintained *in any county in the state.* . . ." (Italics ours.) See also Section 4121, detailing various statutory provisions.

The general doctrine first mentioned above, that the citizenship of a corporation is in the state which created it, is also recognized in 12 Ruling Case Law, section 11, page 20. But later the same article (sec. 93, p. 117) discusses the rules applicable to venue, and says that in a number of jurisdictions a foreign corporation, by complying with the statutory requirements of the domestic State and designating an agent upon whom process may be served, does not acquire a fixed residence in the latter State, but may be sued as a non-resident in any county in the State. The article then points out that in other jurisdictions "a foreign corporation, permitted by comity to exercise corporate functions in a domestic State, must, for the purposes of the venue of actions therein brought against it, and when a statute there-

---

*8 Fletcher, Cyclopedia of the Law of Corporations (Perm. Ed.), sec. 4025, p. 435, sec. 4035, p. 476; 1 Thompson on Corporations (3 Ed.), sec. 565, p. 796; 4 id., sec. 3028, p. 802; 1 Cook on Corporations (8 Ed.), sec. 1, p. 4; 1 Clark & Marshall on Private Corporations, sec. 114, p. 352.

in requires suits to be brought in the county where the defendant resides, be deemed a resident of that county in which it has established its office within the domestic state."

Vol. 18, Fletcher, Cyclopedia of the Law of Corporations (Perm. Add.), section 8651, page 150, says: "In the absence of any statutory provision fixing the place of trial in actions against foreign corporations, an action may be brought against such a corporation in any county in the state where it has an agent upon whom process may be lawfully served. But the venue of actions against foreign corporations is usually dependent upon legislative enactment; and, of course, varies in the different jurisdictions." The same rule is laid down in 8 Thompson on Corporations (3 Ed.), section 6701, page 969. And three of the cases cited by relator hold the fact that a foreign corporation has submitted to the requirements of a jurisdiction in which it is doing business, does not exempt it as of right from being sued anywhere in the State, in the absence of some statute to the contrary: Hobson v. Metropolitan Casualty Ins. Co., 114 Cal. App. 349, 300 Pac. 87; Ryan v. Inyo Cerro Gordo Mining & Power Co., 41 Cal. App. 770, 183 Pac. 250; Boyer v. Northern Pac. Ry. Co., 8 Idaho, 74, 66 Pac. 826.

Under the general rule, therefore, if there are no statutes in this State fixing the venue of suits against foreign corporations, the Shell Company can be sued in any county in the State, or at least in any county where it has an agent upon whom process may be served, and relator would have no ground for complaint on that score. But we think our statutes and decisions do prescribe a rule about that. Section 720, supra, is a general venue statute. Every clause thereof mentions the residence or non-residence of the defendant. The section does not contain the word "corporation," but by its very generality it must refer to *all* defendants, including corporations foreign and domestic, except insofar as other statutes restrict its application. Consequently it must have in contemplation the residence of such corporations; and it must be construed in *pari materia* with other cognate statutes.

As already stated, and as held in the Davis case, supra, 314 Mo. 373, 284 S. W. 464, the statute most directly fixing the venue of suits against domestic and foreign corporations is Section 723; but that section applies only when a corporation is the sole real defendant. If the same corporation is sued jointly with other defendants the venue is governed by Section 720. And what does Section 723 provide about the place of bringing suits against corporations? It says that (save as to railroad companies) the action shall be brought "in the county where the cause of action accrued, . . . or in any county where such corporations shall have or usually keep an office . . . for the transaction of their usual and customary business."

Likewise, the fourth clause of Section 728, Revised Statutes 1929 (Mo. Stat. Ann., p. 947), which is a service statute not a venue statute but nevertheless may be consulted on the question here under consideration, provides that summons may be served "where the defendant is a corporation or joint stock company, organized under the laws of any other state or country, and having an office and doing business in this State, by delivering a copy of the writ and petition to any officer or agent of such corporation or company in charge of any office or place of business, or if it have no office or place of business, then to any officer, agent or employee in any county where such service may be obtained. . . ."

Further, the statutes of this State have long made certain requirements of foreign corporations which are conditions precedent to their engaging in business here, one of which is that each shall "have and maintain a public office or place in this State for the transaction of its business, where legal service may be obtained upon it." [Secs. 4596, 4597, Revised Statutes 1929, Mo. Stat. Ann., pp. 2030, 2032.] Likewise, Section 4598, Laws 1937, pages 204, 206, requires each such corporation to file a sworn statement setting out "the location of its principal office or place in this State for the transaction of its business, the name of its principal agent in Missouri and the address where legal service may be obtained upon it by serving such agent, . . ."

All these statutes, considered together, plainly indicate that a licensed foreign corporation must at least have a domicile in this State where service of process may be obtained upon it, and may have more than one office or place of business, where like service may be obtained. As regards foreign insurance companies, Section 5894, Revised Statutes 1929 (Mo. Stat. Ann., p. 4495), requires that they appoint the Superintendent of the Insurance Department to receive service of process upon them, and this provision is binding so long as they shall have any policies or liabilities outstanding in this State although they may have withdrawn from the State.

Speaking of foreign corporations in general, we think the principle upon which this case must be decided has been settled by our decisons for many years. That principle or rule is that when a foreign corporation enters this State and complies with our laws by setting up one or more offices or agencies for the transaction of its usual and customary business, where service of process may be obtained upon it, it becomes to that extent domesticated, and is amenable to service on the same basis as domestic corporations. We cite excerpts from several cases expressing this view.

Farnsworth v. T-H., A & St. L. Railroad Co. (1859), 29 Mo. 75, 78, was a suit in attachment against a foreign corporation on the ground of non-residence. This court said: "When the foreign corporation has located here, and has as chief office or place of bus-

iness here, it seems no longer to be regarded as a foreign corporation. It may be sued as an individual resident here. The president, secretary, etc., are of course here, or such officers as, under our statute, would enable a suit to be brought and service to be had, and there is no necessity for giving the extraordinary process of attachment against it, any more than against a domestic corporation whose chief office is here. Having its chief office here, it ceases to be, for all the purposes of this law, a foreign corporation. It is not perceived that any hardships can raise from this construction of the law. It is the law in relation to an individual who takes up his residence here and becomes amenable to the law of this State and its process.'' (Some of our early statutes required the foreign corporation to maintain its *chief* office in this State.)

City of St. Louis v. Wiggins Ferry Co. (1867), 40 Mo. 580, 586, 587, held that while ''a corporation is a resident subject or citizen of the State in which it is created, . . . there can be little doubt that the effect of the statutes of this State is such as to make this corporation, though chartered abroad, a resident of this State, not only for the purposes of suing and being sued, by ordinary process, or by attachment, but for all the purpose of ownership of personal property and of taxation, . . .'' In that case the city sued the defendant foreign corporation for taxes on personal property.

Herryford v. The Aetna Ins. Co. (1868), 42 Mo. 148, 152, was a suit against a foreign insurance corporation, service of process having been obtained upon an agent of the company in charge of an agency office in the county where the suit was brought. This court held on authority of the Wiggins case, supra, that while the company had not, by complying with our Missouri law, lost its right to remove the case to the Federal court on the ground of diversity of citizenship, yet the service of process upon it was valid. On this point the court said: ''Although a corporation is a citizen of the State in which it is created, . . . yet it may act by agents beyond the bounds of that State, and become, constructively, resident in this State under the statute, . . . for the purpose of suing and being sued.''

Morgan v. The C. & A. Railroad Co. (1882), 76 Mo. 161, 175, was a suit to enforce a mechanic's lien for work done in the construction of the roadbed of a licensed foreign railroad corporation. This court declared: ''By operation of said statutes, such corporations, in some sense, become domesticated, and they are no longer treated as wholly foreign, and their officers and agents, having in charge such offices so established and maintained in this State, are no longer treated and held as mere agents of such corporation, but for the purpose of service of process or notice, they are the corporation itself, in the same sense and to the same extent as corporations chartered by the laws of this State.''

Sidway v. Mo. Land & Live Stock Co. (1906), 187 Mo. 649, 673, 86 S. W. 150, 156, involved the question whether a licensed foreign corporation was a non-resident of the State in such sense as to deprive it of the benefit of a Statute of Limitations. This court said: ''By positive statute it must and has kept an office and an agent upon whom service could at all times be obtained. There has never been a time when plaintiff could not have brought a suit, obtained personal service, and a general judgment if he recovered. Under such circumstances the defendant is not in contemplation of law a non-resident within the meaning of the Statute of Limitations. Such is now the prevailing judicial opinion of this country.''

■ Now it is true the foregoing cases do not decide question as to the local venue of actions against foreign corporation. Neither is the method of *service* upon foreign corporations under clause 4 of Section 728, supra, identical with that prescribed for service upon domestic corporations by Section 735, Revised Statutes 1929 (Mo. Stat. Ann., p. 955). But all these decisions and the statutes cited show that a licensed foreign corporation must have one or more residences in the State where it is open to service. If that is so; and if under Section 723, supra, when foreign or domestic corporations are sued alone, the venue of actions against them is in ''any county where such corporations shall have or usually keep an office or agent for the transaction of their usual and customary business,'' we can see no reason why their residence should not be regarded as established in the same way when, perchance, they are joined as defendants with another, thereby fixing the venue under Section 720. We do not hold, however, that the provision in Section 723 allowing actions to be brought ''in the county where the cause of action accrued'' applies when the corporation is used under Section 720; for that is not in any sense a residence requirement, and Section 720 does contain such a requirement.

The record in this case shows the Shell Company was ''qualified to do business in the State of Missouri and maintaining an office and place of business in the City of St. Louis;'' and that it was served with process at that office. For the reasons stated, we conclude that the Company resided in the City of St. Louis within the meaning of clause 2, Section 720, Revised Statutes 1929 (Mo. Stat. Ann., p. 929), and that the suit was well brought. Our provisional rule accordingly is discharged. All concur.